RECEIVED

AUG - 8 2016

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

d

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

WOODY D. BILYEU, ET AL.,
Plaintiffs

CIVIL ACTION NO. 1:16-CV-00023

VERSUS

CHIEF JUDGE DRELL

WELLS FARGO INSURANCE
SERVICES USA, INC., ET AL.
Defendants

MAGISTRATE JUDGE PEREZ-MONTES

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Remand (Doc. 14) filed by Plaintiffs Woody D. Bilyeu, Mary H. Bilyeu, and Patrick B. Shelton.  To resolve this Motion, the Court must decide whether the presence of Defendants Directech Southwest, Inc. ("DTSW"), Directech, Inc. ("DT"), the Directech Southwest Employee Stock Ownership Plan ("DTSW ESOP"), and the Directech Employee Stock Ownership Plan ("DT ESOP") (collectively, the "Directech Defendants"), destroys diversity.

Defendants Wells Fargo Insurance Services USA, Inc. ("Wells Fargo") and J. Smith Lanier & Co. ("Lanier") (collectively, the "Broker Defendants") oppose remand. The Broker Defendants argue the Court should disregard the citizenship of the Directech Defendants because the Directech Defendants were improperly joined, should be realigned with Plaintiffs, or are nominal parties.

The Court disagrees.  The Directech Defendants are indispensable parties under the Louisiana Declaratory Judgment Law, La. Code Civ. P. 1871 *et seq.* ("LDJL").  Realignment after removal is a disfavored mechanism, and is unwarranted

1

here because Plaintiffs' interests are not completely aligned with the Directech Defendants' interests.   And as indispensable parties, the Directech Defendants cannot be called "nominal parties."   Remand is appropriate.

I.   <u>Background</u>

    A.   <u>Plaintiffs – Directech officers, directors, and trustees – allege they should have been covered by fiduciary liability insurance policies.</u>

Plaintiffs formerly served as officers and directors of DTSW and DT.[1]  Plaintiffs also served as trustees of the DTSW ESOP and the DT ESOP.[2]  DTSW and DT were wholly owned by Directech Holding Company, Inc. ("DTHC").   DTHC also owned two other companies, Michigan MicroTech, Inc. ("Michigan"), and JBM, Inc. ("JBM") (collectively, the "DTHC Companies").

Plaintiffs allege that, in 2005, the DTHC Companies retained Wells Fargo to procure: (1) fiduciary liability insurance coverage to the DTHC ESOP, DTSW ESOP, DT ESOP, and the Michigan and JBM ESOPs; and (2) directors' and officers' liability coverage for DTHC, DTSW, DT, Michigan, and JBM.  In 2007, the DTHC Companies terminated their agreement with Wells Fargo and signed an agreement with Lanier to procure or renew the same coverages.

---

[1] Woody D. Bilyeu was a president and director of both DTSW and DT.  Mary H. Bilyeu was secretary and a director of DTSW.  Patrick B. Shelton was vice-president and a secretary of DTSW, and a secretary of DT.

[2] Woody D. Bilyeu was a trustee of the DTSW ESOP and the DT ESOP.  Mary H. Bilyeu was a trustee of the DTSW ESOP.  Patrick B. Shelton was a trustee of the DTSW ESOP and the DT ESOP.

The Broker Defendants allegedly procured fiduciary liability and directors' and officers' liability policies through the National Union Fire Insurance Company ("National Union") and Federal Insurance Company ("Federal Insurance").  Plaintiffs claim that they intended these policies to include coverage for past acts by fiduciaries and officers through the inception date of each corporate entity.

B.   **The Department of Labor sued the Directech Defendants and Plaintiffs; National Union and Federal Insurance denied coverage.**

In 2009, the United States Department of Labor ("DOL") filed a civil suit in the United States District Court for the Eastern District of Kentucky ("the DOL Suit"). The DOL named Plaintiffs and the Directech Defendants in its lawsuit.  The DOL alleged that Plaintiffs and the Directech Defendants – among other entities – engaged in a number of improper transactions.

Plaintiffs sought coverage under the fiduciary liability and directors' and officers' liability policies.  National Union and Federal Insurance denied coverage, claiming: (1) the DTSW ESTOP and DT ESOP were not covered "Plans" under the policies;  (2) the policies did not cover acts which occurred prior to the policies' effective dates; and (3) the policies did not cover acts which occurred before DTSW and DT became subsidiaries of DTHC.

C.   **Plaintiffs filed their first lawsuit, which was removed, remanded, and decided in part against Plaintiffs.**

On January 7, 2009, Plaintiffs filed suit against National Union and Federal Insurance in the Eight Judicial District Court in Winn Parish, Louisiana (the "Coverage Suit").  (Docket No. 1:09-cv-00248, Doc. 1-2).  In their original Petition for

Declaratory Judgment, Plaintiffs sought declarations that: (1) Plaintiffs were insureds under the policies issued by National Union and Federal Insurance; and (2) National Union and Federal Insurance are obligated to defend and indemnify Plaintiffs.

In a First Supplemental and Amending Petition, Plaintiffs added DTHC, DTSW, and DT as defendants. Plaintiffs sought a declaration "finding [Plaintiffs'] status within the companies named herein as well as the employee stock ownership plans and that they be declared as insureds under the policies" issued by National Union and Federal Insurance. (Docket No. 1:09-cv-00248, Doc. 1-3, p. 2).

Defendants removed the Coverage Suit. (Docket No. 1:09-cv-00248, Doc. 1). Defendants argued that the Directech defendants were improperly joined, and alternatively, that Plaintiffs had not asserted claims adverse to the Directech defendants.

Plaintiffs subsequently moved for leave to file a Second Supplemental and Amending Complaint. (Docket No. 1:09-cv-00248, Doc. 16-2). Among other proposed additions, Plaintiffs included references to indemnification agreements between Plaintiffs, DTSW, and DT. Plaintiffs did not specifically request declaratory relief regarding any such indemnification agreements. Plaintiffs did, however, state that they, along with DTSW and DT, "have a claim and interest for a declaration that [DTSW] and [DT] are sponsor organizations and insureds" under the policies issued by National Union and Federal Insurance, and that DTSW and DT "have a claim and interest that [Plaintiffs] be determined insureds under the policy in the event that

4

[DTSW] and [DT] seek reimbursement from National Union and Federal [Insurance] for amounts paid per the indemnification agreements to [Plaintiffs]." (Docket No. 1:09-cv-00248, Doc. 16-2, pp. 2-3). This proposed amendment was never granted.

Defendants removed, asserting that: (1) the Directech defendants were improperly joined; and (2) any adverse claim against the Directech defendants was unrelated to Plaintiffs' claims against National Union or Federal Insurance. Plaintiffs moved to remand.

In its ultimate[3] opinion, this Court held that remand was appropriate, and that realignment of the parties was not. The Court's reasoning remains crucial:

> It is not difficult to foresee that consideration of this case on the merits may lead to declarations that plaintiffs are insureds under the policies or not; and, that they are entitled to insured AND UNINSURED indemnities from the Directech parties, or not. At this juncture, we certainly cannot say the request for declaratory relief as to either set of defendants is unreasonable or obviously fraudulent. The requests for a declaration of the relationship with the Directech parties, in short, may result in separate, definitive, stand alone declarations independent of the insurance coverage declarations. These demands are clearly adversarial as between plaintiffs and the Directech parties and are not capable of being folded into the demands against the insurers.

Bilyeu v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, CIV. A. 09-00248, 2010 WL 1190037, at *2 (W.D. La. Mar. 26, 2010), vacated (Mar. 26, 2010), judgment entered,

---

[3] The Magistrate Judge initially held that Defendants' improper joinder arguments were unpersuasive, but the parties should be realigned because "Directech's interest in determining coverage is identical to that of the plaintiffs." (Docket No. 1:09-cv-00248, Doc. 57, p. 4). The District Judge initially disagreed with the Magistrate Judge and held that remand was proper. (Docket No. 1:09-cv-00248, Doc. 65). The District Judge vacated that judgment, reopened the case, and allowed more briefing. The District Judge again granted the motion to remand. (Docket No. 1:09-cv-00248, Doc. 83).

CIV. A. 09-00248, 2010 WL 1189882 (W.D. La. Mar. 26, 2010), vacated (Mar. 26, 2010), and judgment reinstated sub nom. Bilyeu v. Nat'l Union Fire Ins. Co., CIV. 09-0248, 2011 WL 201901 (W.D. La. Jan. 14, 2011).

Once remanded, Plaintiffs pursued their claims regarding coverage against National Union and Federal Insurance. See Bilyeu v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 50,049 (La.App. 2 Cir. 9/30/15, 4); 184 So.3d 69, 72, reh'g denied (Nov. 12, 2015), writ denied, 2015-2277 (La. 2/19/16); 187 So.3d 462. Plaintiffs also filed an additional claim against DTSW and DT for indemnification. (Doc. 32-4). The trial court granted motions for summary judgment in favor of National Union and Federal Insurance, "finding that the policies covered only those wrongful acts that occurred after the date the policies were issued, and that the DOL letters and subpoenas constituted a 'claim made' which the plaintiffs did not report within the policy period." Id. at 73.

Plaintiffs later sought leave to amend their petition for a third time to add the Broker Defendants, and to "amplify" their claims against National Union and Federal Insurance to specify that Plaintiffs incurred defense and settlement costs in the DOL proceedings. Id. The trial court denied that motion: "[T]he court ruled that the plaintiffs had known the identities and roles of the brokers for nearly five years, so there was no good cause to join them at that late date. The court added that nothing would prevent the plaintiffs from filing a separate suit against them." Id.

Plaintiffs appealed – among other things – the trial court's rulings regarding coverage and their proposed amendment. The Louisiana Second Circuit Court of

Appeal affirmed summary judgment in favor of National Union and Federal Insurance. Id. at 81. The court also held that Plaintiffs were not entitled to amend their petition. Id. The court found that Plaintiffs' second amended petition adequately asserted claims for special damages – defense and settlement costs – against National Union and Federal Insurance. See id. The court also held that Plaintiffs were not entitled to add the Broker Defendants:

> [T]he plaintiffs knew the identities of the brokers, and their failure to procure the desired coverage, for nearly five years before seeking to join them as defendants; they moved to amend after the district court had issued reasons for judgment granting National Union's and Federal's motions for summary judgment, and only a week after the court rescinded that ruling to permit a final round of discovery. These facts create an inference that the motion for leave to amend was intended to delay the inevitable dismissal of the major defendants; they fully support the court's finding that the move was untimely. The court also did not abuse its discretion in finding, with commendable restraint, that this litigation was "already burdensome"; it logs in at over 3,300 pages of district court filings, over 800 pages of trial exhibits, and four CDs containing over 1 Gigabyte of data, much of it duplicative. The district court was within its discretion to find that allowing the amendment would be unduly prejudicial to the opposing parties. This assignment of error does not present reversible error.

Id. On February 9, 2016, the Louisiana Supreme Court denied writs. Bilyeu v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 2015-2277 (La. 2/19/16); 187 So.3d 462.

The Court is not aware of a decision resolving Plaintiffs' indemnity claims against the Directech Defendants. Those claims presumably remain pending before the state trial court, and certainly did at the time of removal.

**D.   Plaintiffs filed this lawsuit; Defendants removed.**

On September 11, 2015 – while the Coverage Suit was pending on suspensive appeal – Plaintiffs filed another Petition for Declaratory Judgment in the Eighth

Judicial District Court in Winn Parish, Louisiana.  (Doc. 1-2).  Plaintiffs named DTSW, DT, the DTSW ESTOP, the DT ESOP, Wells Fargo, and Lanier as defendants. Plaintiffs seek declaratory relief regarding the procurement and scope of the fiduciary liability and directors' and officers' liability coverage.

Defendants removed on the basis of diversity jurisdiction.  Defendants contend that, for purposes of 28 U.S.C. § 1332, the Broker Defendants are diverse and $75,000 is at issue.  Defendants further contend that the remaining Defendants – the Directech Defendants – are either: (1) improperly joined; (2) nominal defendants, whose citizenship should be disregarded for purposes of diversity; or (3) should be realigned with Plaintiffs for purposes of diversity.

## II.   Law and Analysis

### A.   Plaintiffs did not improperly join the Directech Defendants.

A federal court's jurisdiction is limited to areas authorized by the United States Constitution and acts of Congress.  See Scarlott v. Nissan N. Am., Inc., 771 F.3d 883, 887 (5th Cir. 2014).  Remand is required "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c).

A federal court has "diversity jurisdiction" where the amount-in-controversy exceeds $75,000, exclusive of interest and costs, and where complete diversity exists. See 28 U.S.C. § 1332(a).  The removing party bears the burden of establishing diversity jurisdiction.  See Mumfrey v. CVS Pharmacy, Inc., 719 F.3d 392, 397 (5th Cir. 2013).  "Any ambiguities are construed against removal and in favor of remand to state court."  Id.

8

The doctrine of improper joinder is a narrow exception to the complete diversity requirement.  Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011).  The removal statutes "entitle a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'"  Smallwood v. Illinois Cent. R. Co., 385 F.3d 568, 573 (5th Cir.2004) (citing 28 U.S.C. § 1441(b).  "[T]he focus of the inquiry must be on the joinder, not the merits of the plaintiff's case."  Id.

"To establish improper joinder, the removing party must demonstrate either: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"  Cuevas, 648 F.3d at 249 (quoting Smallwood, 385 F.3d at 573).  When, as here, the second method is at issue,

> the test is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant. If there is no reasonable basis of recovery, then the court can conclude that the plaintiff's decision to join the in-state defendant was indeed improper, unless that showing compels the dismissal of all defendants.

Id. at 249 (internal citations and quotations omitted) (emphasis added).  "A mere theoretical possibility of recovery in state court will not preclude a finding of improper joinder."  African Methodist Episcopal Church v. Lucien, 756 F.3d 788, 793 (5th Cir. 2014).

The parties disagree regarding the correct governing standard in this LDJL lawsuit.  Plaintiffs suggest that the Court must – "after resolving all doubt regarding

9

any disputed facts and ambiguities of law in favor of" Plaintiffs – determine whether the Broker Defendants have carried the

> heavy burden of proving that [Plaintiffs] have no possibility of showing that the [Directech Defendants] have an interest which would be affected by a declaration that the [Directech Defendants] did or did not take action to procure insurance policies through Wells Fargo . . . and Smith . . . to specifically provide insurance coverage for Plaintiffs in their roles as directors of DTSW and DT and as trustees of the DTSW ESOP and [DT] ESOP for wrongful acts occurring prior to the date the policies would be issued which would include the time period that Plaintiffs served as directors and trustees.

(Doc. 14-2, p. 13).  Defendants argue the Court must determine "whether Plaintiffs have no possibility of recovery against the DirecTech Defendants."  (Doc. 26, p. 3). This disagreement is partly semantical, and partly substantive.

Semantically, Defendants articulate the correct standard.  In prior improper joinder cases involving LDJL claims, this Court has asked whether "Plaintiffs cannot possibly recover against each of the non-diverse defendants." Alfred Miller Contracting Co. v. Carboline Co., CIV.A. 13-00084, 2013 WL 4538901, at *3 (W.D. La. Aug. 26, 2013).  Other courts have done the same. See, e.g., Kahn Swick & Foti, LLC v. Spector Roseman Kodroff & Willis, PC, CIV.A. 14-1979, 2014 WL 7140312, at *3 (E.D. La. Dec. 12, 2014) ("[Diverse defendants] have not met their heavy burden of establishing that no reasonable basis exists under which the Court could predict that [plaintiffs] might be able to recover a declaratory judgment against [non-diverse defendants].");  Alonzo v. State, CIV.A. 02-2792, 2002 WL 31654918, at *4 (E.D. La. Nov. 21, 2002) ("In order to establish fraudulent joinder, the Defendant must show that there is no possibility of recovery from the Defendant in State court.");  Gauthier,

<u>Houghtaling & Williams, LLP v. David L. Spear of Events Inc.</u>, CIV. A. 08-1271, 2008 WL 2073985, at *3 (E.D. La. May 14, 2008) ("[T]here is no reasonable basis to predict that plaintiff might be able to obtain declaratory relief adverse to the in-state defendants.").   The improper joinder standard need not be reformulated – semantically – in the LDJL context.

Substantively, Plaintiffs' arguments raise the issue of whether the LDJL alters what it means to "recover against" non-diverse defendants.   The LDJL requires Plaintiffs to join "all persons . . . who have or claim any interest which would be affected by the declaration" sought.   <u>See</u> La. Code Civ. P. art. 1880.   Joinder of such interested parties is mandatory.   <u>See</u> <u>Tensas Par. Police Jury v. Perritt</u>, 50,123 (La.App. 2 Cir. 9/30/15, 10); 181 So.3d 143, 148 ("An affected, interested person must be cited in a declaratory judgment action when his existence and claim are evident."). Accordingly, Plaintiffs argue that the Court must determine whether the Directech Defendants have "any interest" which would be affected by the declaration.  (Doc. 32, p. 3).  Defendants seem to argue that Plaintiffs' claims must be "against" or "adverse to" the Directech Defendants.  Plaintiffs have the better of this disagreement.

First, Plaintiffs were *required* to join the Directech Defendants under the LDJL.   Each claim for declaratory relief against the Broker Defendants either includes or affects the Directech Defendants.   For example, Plaintiffs seek declarations that the Broker Defendants "agreed to procure insurance coverage for the Companies [including DTSW, DTHC, and DT] to include fiduciary liability and insurance coverage for the [DTSW ESOP] and the [DT ESOP]."  (Doc. 1-2, p. 8).

11

Further, declaratory relief against the Broker Defendants may significantly affect Plaintiffs' indemnity claims in the Coverage Suit.

Therefore, the Directech Defendants have a *direct* interest in not just the *outcome* of this lawsuit, but in this lawsuit itself. Thus, the Court "cannot say that the Plaintiff[s] [have] no possibility of asserting a cause of action against" the Directech Defendants. Windhorst v. State Farm Fire & Cas. Co., CIV.A. 07-6961, 2008 WL 170054, at *2 (E.D. La. Jan. 16, 2008)

Second, to the extent it is possible to characterize a declaratory judgment as purely "adverse to" or "against" a party, the Court finds no such requirement to sustain joinder in this case. Procedurally, Plaintiffs were required to name the Directech Defendants *as defendants*. Substantively, "[t]he function of a declaratory judgment is simply to establish the rights of the parties or express the opinion of the court on a question of law without ordering anything to be done." Augustine v. Employers Mut. Cas. Co., 2:08-CV-1102, 2010 WL 4930317, at *13 (W.D. La. Nov. 30, 2010). Given this function, other courts have rejected improper joinder arguments in cases where plaintiffs sought declaratory relief under the LDJL which was not expressly "against" non-diverse defendants. See, e.g., Johnson v. Metro. Life Ins. Co., CIV.A. 08-4312, 2009 WL 511282, at *1 (E.D. La. Feb. 27, 2009) (finding a plaintiff did not improperly join a named beneficiary in a declaratory judgment action to recover life insurance proceeds, because the beneficiary "clearly had an interest which would be affected by the declaratory relief sought by the plaintiff," and therefore, *had* to be joined as a defendant).

Moreover, the declaratory judgment requested by Plaintiffs could be, in several senses, "adverse" to the Directech Defendants.  A court may determine that Wells Fargo and Lanier *did not* agree to procure insurance coverage for the Directech Defendants, or *are not* responsible for defense and indemnity costs.  Those outcomes would certainly support Plaintiffs' joinder arguments.  See Windhorst, 2008 WL 170054 at *2 (E.D. La. Jan. 16, 2008) ("[T]he Plaintiff argues that this action against NCC is to determine whether NCC's charges were reasonable or whether State Farm's interpretation of the reasonableness of NCC' fees is correct. State Farm argues that the Plaintiff does not seek any actual recovery against NCC, and, therefore, the Plaintiff has no claim or possibility of recovery against NCC.  The Court cannot say that the Plaintiff has no possibility of asserting a cause of action against NCC.").

Construing ambiguities in favor of remand, and broadly applying the LDJL, the Court finds that Plaintiffs did not improperly join the Directech Defendants.  See Perschall v. State, 96-0322 (La.7/1/97), 697 So.2d 240, 253.

### B.  <u>Realignment is neither favored nor warranted here, because Plaintiffs' interests are not completely aligned with the Directech Defendants.</u>

Defendants argue that the Directech Defendants should be realigned as plaintiffs.  In a watershed opinion, the United State Supreme Court explained the function and process of realigning parties for purposes of diversity jurisdiction:

> To sustain diversity jurisdiction there must exist an 'actual', 'substantial', controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are

plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to 'look beyond the pleadings, and arrange the parties according to their sides in the dispute'. Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary 'collision of interest' exists, is therefore not to be determined by mechanical rules. It must be ascertained from the 'principal purpose of the suit', and the 'primary and controlling matter in dispute'. These familiar doctrines governing the alignment of parties for purposes of determining diversity of citizenship have consistently guided the lower federal courts and this Court.

City of Indianapolis v. Chase Nat. Bank of City of New York, 314 U.S. 63, 69–70, 62 S.Ct. 15, 17, 86 L.Ed. 47 (1941) (internal citations and quotations omitted).  A court considering realignment thus "looks for a 'necessary collision of interest' between parties based on the principal purpose of the suit and the primary and controlling matter in dispute." Kunce v. State Farm Mut. Auto. Ins. Co., 13-CV-0080, 2013 WL 1501041, at *2 (W.D. La. Apr. 10, 2013).  Neither cross-claims nor counterclaims are considered. Id.

The Fifth Circuit has at least tacitly sanctioned realignment after removal. See, e.g., Hussain v. Boston Old Colony Ins. Co., 311 F.3d 623, 632 (5th Cir. 2002) ("[T]he Supreme Court has counseled that when removal has occurred and jurisdictional requirements otherwise have been met, any problems with party labels are immaterial because the parties could have been 'realigned' by the court.").  In the past, some district courts have followed suit. See, e.g., Hillman Lumber Products, Inc. v. Webster Mfg., Inc., CIV.A. 06-1246, 2006 WL 2644968, at *2 (W.D. La. Sept. 14, 2006) ("'[T]he federal court may realign the parties according to their real interests, as it can in a case originally instituted in a federal court, before deciding whether a true 'defendant' is seeking removal to federal court.'") (quoting Wright,

14

Miller & Cooper, § 3731 at pp. 255-56); Carlton v. Withers, 609 F.Supp. 146, 149 (M.D. La. 1985) (realignment "applies when determining the propriety of removal based upon diversity jurisdiction").

Additionally, neither the Fifth Circuit nor the Supreme Court has prohibited realignment after removal.  Absent binding authority, "it cannot be said that a realignment of the parties [after removal] would be contrary to law per se." Ashford v. Aeroframe Servs., LLC, 2:14-CV-992, 2015 WL 2089994, at *3 (W.D. La. May 4, 2015).

However, in a more recent trend, courts in our circuit consistently disfavor realignment after removal. See, e.g., Kahn Swick & Foti, LLC v. Spector Roseman Kodroff & Willis, PC, CIV.A. 14-1979, 2014 WL 7140312, at *4 (E.D. La. Dec. 12, 2014) ("[T]he Court recognizes that a number of its sister courts in this Circuit have found utilizing realignment as a basis for removal from state court to be an improper legal mechanism.").  Those courts question the propriety of "using realignment after removal to cure a defect in removal jurisdiction in general," and "using realignment after removal to allow a third-party defendant to remove on diversity grounds" in particular. See Williams v. Mor-Tem Risk Mgmt. Servs. Inc., 6:11-CV-1408, 2012 WL 1014752, at *4 n.1 (W.D. La. Mar. 22, 2012).

Most courts following the more recent trend express concerns about federalism. In City of Indianapolis, the Supreme Court sanctioned realignment in a suit originally filed in federal court. See 314 U.S. at 62.  However, realignment after removal raises "federalism concerns involved in balancing the general right of the

15

plaintiff to choose his forum with the statutory right of defendants to remove to a federal forum." <u>See</u> <u>Williams</u>, 2012 WL 1014752 at *4.

The Court joins its contemporaries in declining to realign parties post-removal. Realignment after removal is still possible barring a binding decision to the contrary. But this case does not justify a departure from the recent trend.

Federalism is of particular concern here. This lawsuit is an offshoot of the Coverage Suit, a parallel proceeding in state court. The Coverage Suit is still pending; raises issues which are closely intertwined with the issues presented in this case; and was previously remanded by this Court. In fact, the state courts essentially suggested that Plaintiffs file this lawsuit. It is difficult to imagine a case which presents more apparent federalism issues.

Further, the parties' interests are not completely "aligned," at least not to the extent that the parties could be called "partners in litigation." It is true that Plaintiffs seek relief which would – at least in effect – benefit the Directech Defendants. But that is true largely because Plaintiffs have underlying disagreements with the Directech Defendants. Those disagreements including an adverse claim for indemnification, a fact which Plaintiffs plead as a basis for this lawsuit. And again, Plaintiffs' could obtain declaratory relief in this case which is detrimental to the Directech Defendants.

Stated otherwise, the Directech Defendants may desire the same result *in this case* as Plaintiffs. But that is because the result may diffuse underlying hostilities with Plaintiffs in the Coverage Suit. This is not the type of "collision of interests"

courts have envisioned for realignment.  See <u>Syms, Inc. v. IBI Sec. Serv., Inc.</u>, 586 F.Supp. 53, 56 (S.D.N.Y.1984) ("The fact that one defendant may benefit should plaintiff prevail against another defendant is not in and of itself sufficient to sustain realignment.").   And parallel, adversarial proceeding in state court provide a compelling reason to deny realignment in federal court.  See <u>Mellon Bank, N.A. v. Poling</u>, CIV.A.04-1461, 2004 WL 1535799, at *4 (E.D. Pa. June 10, 2004).  Therefore, the Court will not realign the Directech Defendants.

C.   **<u>The Directech Defendants are not "nominal parties."</u>**

Finally, Defendants argue that the Directech Defendants are "nominal parties."  It is clear that, to find diversity jurisdiction, the Court can disregard the citizenship of a "nominal party."  <u>Louisiana v. Union Oil Co. of California</u>, 458 F.3d 364, 366 (5th Cir. 2006).  The more difficult question is whether a party is, in fact, "nominal":

> Whether a party is [formal or] 'nominal' for removal purposes depends on whether, in the absence of the [party], the Court can enter a final judgment consistent with equity and good conscience, which would not be in any way unfair or inequitable. An alternate articulation of the test is whether or not a named party's role in the law suit is that of a depositary or stakeholder. We take practical considerations into account in making this determination.

<u>Id.</u> at 366–67 (internal citations and quotations omitted).

Here, the Directech Defendants are indispensable parties under La. Code Civ. P. art. 1880.  The Directech Defendants are specifically referenced in Plaintiffs' requests for declaratory relief.  And the Directech Defendants will be substantially affected by Plaintiffs' requests, both here and in the Coverage Suit.  The pendency of

Plaintiffs' indemnity claims in the Coverage Suit, rather than in this lawsuit, does not alter the Court's conclusion.  <u>Compare</u> <u>Windhorst</u>, 2008 WL 170054 at *3 ("Taking into account practical considerations, the Court finds that NCC is not a nominal party.  While the Plaintiff could bring a separate action against NCC, it is entirely possible that the Plaintiff could be subject to conflicting judgments.").

Considered pragmatically, the Directech Defendants cannot be characterized "nominal parties" in this lawsuit.  Their citizenship must therefore be considered.

## III.   Conclusion

For the foregoing reasons,

IT IS HEREBY RECOMMENDED that the Motion to Remand (Doc. 14) be GRANTED.

IT IS FURTHER RECOMMENDED that the Motion to Dismiss (Doc. 11) be DENIED AS MOOT.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this _____ day of August, 2016.

Joseph H.L. Perez-Montes
United States Magistrate Judge

19